# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-1755V
### UNPUBLISHED

| | |
|---|---|
| MALANDA DIXON,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 20, 2024<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling<br>on the Record; Findings of Fact;<br>Influenza Vaccine; Pneumococcal<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*William E. Cochran, Jr., Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN*, for petitioner.

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC*, for respondent.

## RULING ON ENTITLEMENT[1]

  On December 3, 2020, Malanda Dixon filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by influenza ("flu") vaccine and/or a pneumococcal conjugate vaccine ("PCV") administered on December 7, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons described below I find that Petitioner is entitled to compensation.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

Petitioner filed this claim on December 3, 2020. ECF No. 1. Respondent filed a Rule 4(c) Report recommending that entitlement be denied. ECF No. 33.

Petitioner subsequently filed a motion for a ruling on the Record on February 24, 2023. Petitioner's Motion for Ruling on the Record (Entitlement) ("Mot."), ECF No. 35. Petitioner argues therein that she meets the Table Claim requirements for a SIRVA. Mot. at 7-12. Respondent filed a response on March 24, 2023. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 37. Respondent argues that Petitioner has failed to meet the requirements of a Table claim because Petitioner alleges a right SIRVA but received vaccines in her left arm. Opp. at 9-12. Petitioner filed a reply on April 28, 2023, addressing Respondent's arguments. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record (Entitlement) ("Reply"), ECF No. 42.

## II.    Petitioner's Medical Records

On December 7, 2017, Petitioner received flu and pneumococcal conjugate vaccines. Ex. 15 at 13-14. Petitioner's records include a prior history of cervical radiculopathy, carpal tunnel syndrome, and cervicalgia. Ex. 3 at 63-74; Ex. 5 at 24-25; Ex. 7 at 5-15. However, there is no history of pain or dysfunction of her right shoulder. The record states that both vaccines were administered in Petitioner's *left* arm. Ex. 15 at 13-14.

One week later, Petitioner presented to her primary care provider and was seen by Physician's Assistant ("PA") Tiffany Bryant reporting that she "received a Flu and pneumonia shot in her right arm one week ago at Rite Aid and has pain in arm since…." Ex. 3 at 76. A Medrol Dosepak was prescribed. *Id.*

Petitioner returned to PA Bryant on December 21, 2017, complaining of continued right shoulder pain. Ex. 3 at 86. Her pain was reportedly aggravated with movement. *Id.* An examination showed tenderness and mild pain with motion. *Id.* at 88. An x-ray taken on December 21, 2017, was unremarkable. *Id.* at 84. Petitioner returned to PA Bryant on December 27, 2017, for right arm pain. PA Bryant noted that Petitioner had experienced pain since she received the flu vaccine and PCV in her "R upper arm." *Id.*

Thereafter, Petitioner visited to Daniel Schrock, D.C., for eight chiropractic treatments between December 28, 2017, and February 15, 2018. Ex. 4 at 5-12.

On January 23, 2018, Petitioner saw PA Lacie Baker for an orthopedic consultation at OrthoGo. Ex. 5 at 5. She reported pain in her right shoulder that began "after receiving 2 vaccinations in her right arm." *Id.* Upon examination, Petitioner's right shoulder was tender and positive for impingement testing. *Id.* PA Baker administered a steroid injection into her right shoulder. *Id.*

Petitioner again presented to OrthoGo on February 5, 2018, and saw PA Jeffrey Norton. Ex. 5 at 6. She reported right shoulder pain that started after a flu shot, rating it as five out of ten in severity and "constant." *Id.* An examination showed mild swelling, slight decreased range of motion, and positive impingement testing. *Id.* A second steroid injection was administered at that time. *Id.* On February 19, 2018, Petitioner returned to PA Norton with continued reports of shoulder pain that started "after having a flu shot and pneumonia shot." *Id.* at 7. Petitioner was assessed with moderate tendinitis of the right rotator cuff and a third steroid injection was administered. *Id.*

Petitioner returned to PA Norton for right shoulder pain on March 5, 2018. Ex. 5 at 8. PA Norton noted Petitioner had moderate tendinitis of her right rotator cuff that she rated as two out of ten. *Id.* A fourth steroid injection was administered.

Petitioner had an initial physical therapy evaluation with physical therapist Celeste Crider on March 9, 2018. Ex. 6 at 12-16. She reported that she had a flu vaccine and a PCV in her right scheduler on December 7, 2017, and experienced pain later that day from her shoulder to her hand. *Id.* at 12. She attended five therapy sessions between March 9 and March 22, 2018. *Id.* at 12-16, 19-26.

On August 27, 2018, Petitioner had an MRI of her right shoulder, which revealed tendinopathy and a high-grade tear of the anterior supraspinatus muscle, patchy marrow edema, mild-to-moderate subdeltoid bursal fluid, among other conditions. Ex. 5 at 4. She presented to PA Baker at OrthoGo on August 28, 2018 for continued, constant shoulder pain she rated as eight out of ten. *Id.* at 9. Surgery was recommended due to a "very large" rotator cuff tear. *Id.*

Petitioner was next seen for shoulder pain on September 17, 2018, when a Lidoderm patch was provided. Ex. 3 at 109. Then, on March 18, 2019, she saw PA Bryant for reported shoulder pain. *Id.* at 122. Her shoulder was described as chronic and stable, and Petitioner was told to follow-up when she was ready to proceed with surgical intervention.

In subsequent records, Petitioner's problem list continued to indicate chronic right arm and shoulder pain through 2022, but there is no record of specific treatments after March 18, 2019. Ex. 19 at 18-15.

### III.     Affidavit Evidence

Petitioner submitted an affidavit in support of her claim. Ex. 1. She stated that the vaccinations were administered in her right arm. Destiny Weaver, Petitioner's daughter, submitted an affidavit as well. Ex. 16. Ms. Weaver stated that she was with Petitioner when the vaccinations were administered and recalls both were given to her right arm. *Id.* at 1-2. Further, Ms. Weaver stated that Petitioner is left-handed and chose her right shoulder for the vaccination site. *Id.* at 2.

### IV.     Parties' Arguments

Petitioner asserts that she has suffered an On-Table right shoulder SIRVA, and that the vaccinations were administered in her right shoulder. Mot. at 7-12. Respondent argues that Petitioner has failed to show she is entitled to compensation. Specifically, Respondent argues that Petitioner cannot establish a right shoulder SIRVA Table claim because the records indicate her vaccinations were administered in her left arm. Opp. at 9-12.

### V.     Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  *See* § 11(c)(1)(A)(B)(D)(E).

hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Likely Received the Flu Vaccine and the PCV in her Right Shoulder

Respondent contends that, although Petitioner alleges a right SIRVA, the vaccine records indicate that the vaccines were given in her left arm. Opp. at 9-10. Respondent's reading of the administration record is literally correct (*see* Ex. 15 at 13-14 (stating the vaccines were administered in Petitioner's left arm)), but his argument does not take into account the totality of the evidence, which soundly supports a *right-side* vaccine administration finding.

The overall medical records, coupled with Petitioner's witness statement, establish that Petitioner consistently and repeatedly reported to treaters right shoulder pain that was caused by a PCV and flu vaccine received *in that shoulder*. *See, e.g.,* Ex. 3 at 76 (record stating that Petitioner reported right shoulder pain that started when she received a flu and pneumonia shot in her right arm); *id.* at 91 (reporting right shoulder pain since "given flu vax and Prevnar 13 in R upper arm"); Ex. 5 at 5 (stating that Petitioner's right shoulder pain began "after receiving 2 vaccinations in her right arm.") Further, Petitioner consistently sought care for her right shoulder due to pain she linked to those two

vaccinations. *See, e.g.*, Ex. 5 at 7 (record stating Petitioner reported continued right shoulder pain that "came about after having a flu shot and pneumonia shot in the right shoulder…").

Additionally, Petitioner's affidavits provide corroborating evidence. For example, Ms. Weaver states that Petitioner is left-handed and chose to receive the vaccinations in her non-dominant right arm. Ex. 16 at 1-2.

These records provide sufficient evidence that the vaccines were likely administered in Petitioner's right shoulder to overcome the contrary administration record. The subsequent treatment records gain strength as well given their temporal proximity to the date of vaccination. The only contrary record comes from the administration record itself. While that document is both the first contemporaneous item of evidence relevant to this fact dispute, it finds no other corroboration in the overall record – and I do not give it excessive weight simply, since it is consistently observed in SIRVA cases in the Program that computer-generated administration records are frequently incorrect, or are completed based on assumptions about what arm will receive the vaccine in most cases – but without taking into account the relevant petitioner's circumstances. *See, e.g., Schoenborn v. Sec'y of Health & Hum. Servs.*, No. 21-0227V, 2024 WL 1342999, at *6 (Fed. Cl. Feb. 28, 2024) (noting that it is repeatedly observed in Program cases that "it is not unusual for the information regarding site of vaccination in computerized systems to be incorrect") (internal citations omitted); *Cook v. Sec'y of Health & Hum. Servs.*, No. 21-1029V, 2022 WL 3012304, at *4 (Fed. Cl. June 29, 2022) (noting that information regarding site of vaccination in computerized systems is not always correct and often uses a 'dropdown' menu which may not be updated each time a separate vaccine is administered to a different individual).

### 2. No Prior Right Shoulder Condition or Injury Would Explain Petitioner's Symptoms

Another requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Petitioner's records do not contain evidence of a prior condition or injury that would explain her current symptoms. Ex. 3 at 14-74; Ex. 5 at 14-17 and 24-27; Ex. 7 at 5-17; Ex. 8; Ex. 12; and Ex. 13 at 5-80. Additionally, Respondent does not contest that Petitioner meets this criterion for a Table SIRVA. Report at 2; Opp. at 3.[4]  Therefore, Petitioner meets this requirement.

---

[4] Respondent does not contest this aspect of Petitioner's claim, but "reserves the right to address" Petitioner's arguments at a later time. Opp. at 9 n.3.

### 3. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccinations

I also find that there is a preponderance of evidence that onset of Petitioner's injury was within forty-eight hours of her vaccinations. Respondent does not contest this aspect of Petitioner's claim, and the medical records, coupled with Petitioner's witness statement, establish onset of her injury close-in-time to vaccination. Ex. 3 at 76 (reporting pain in Petitioner's arm since she received the flu vaccine and the PCV).

### 4. Petitioner's Pain was Limited to her Right Shoulder

The evidence supports the conclusion that Petitioner's pain was limited to her right shoulder. Respondent does not contest this aspect of the claim, and the records consistently report shoulder pain and loss of range of motion in her right shoulder, which is consistent with other SIRVA cases. Petitioner's medical procedures were also limited to her right shoulder. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to her right shoulder.

### 5. There is No Evidence of Another Condition or Abnormality that would Explain Petitioner's Current Symptoms

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and the records do not contain any evidence that another condition or abnormality that would explain Petitioner's symptoms.

## B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine and PCV on December 7, 2017, in the United States. Ex. 15 at 13-14; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of her vaccinations, and that those vaccinations were administered in her right shoulder. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). I have also found that there is no other condition which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). The records demonstrate, and Respondent does not contest, that Petitioner suffered the residual effects of her shoulder injury for more than six months and underwent two surgical procedures. Ex. 5 at 9. Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master